PEOPLE v FEELEY

Docket No. 325802. Submitted August 5, 2015, at Lansing. Decided
    September 15, 2015, at 9:15 a.m. Reversed and remanded 499
    Mich 429.

The 53rd District Court, Carol Sue Reader, J., refused to bind Ryan
    Scott Feeley over for trial on the charge of resisting and obstruct-
    ing a police officer, a charge that resulted from defendant's failure
    to comply with a Brighton reserve police officer's command. The
    reserve police officer and a full-time police officer responded to a
    call from a bar for assistance with a fight occurring there. When
    the officers arrived on the scene, defendant was identified as the
    individual causing the problem. When defendant ran away from
    the reserve police officer after the reserve officer asked to speak
    with defendant, the reserve officer identified himself as a police
    officer, and he ordered defendant to stop. Defendant stopped after
    the reserve officer's second command, looked at the reserve
    officer, uttered an expletive, and began reaching behind his back.
    The reserve officer pulled his weapon and ordered defendant to
    the ground. Defendant complied, and with help from two other
    officers, defendant was taken into custody. The court refused to
    bind defendant over for trial because the court concluded that
    failure to comply with the command of a reserve police officer was
    not within the scope of MCL 750.81d. The prosecution filed an
    application for leave to appeal the district court's decision. The
    Livingston Circuit Court, Michael P. Hatty, J., denied the appli-
    cation for lack of merit. The prosecution appealed by leave
    granted.

The Court of Appeals *held*:

The district court properly refused to bind defendant over on
    the charge of resisting and obstructing, and the circuit court
    properly denied leave to appeal the district court's decision,
    because the applicable statute, MCL 750.81d, does not include
    reserve police officers in the list of persons with whose lawful
    orders an individual must comply when the officers are engaged
    in the performance of their duties. The resisting and obstructing
    statute penalizes an individual who knows, or has reason to
    know, that a person is engaged in the performance of his or duties,
    and who assaults, batters, wounds, resists, obstructs, opposes, or

endangers that person during the performance of those duties. The statute defines "person" by including a detailed list of occupations to which the statute applies. "Reserve police officer" is not included in that list of occupations. If the Legislature intended to penalize a defendant's resistance to, and obstruction of, a reserve police officer's performance of his or her duties, the Legislature would have included reserve police officers in the statutory list. Because it did not, and because it did expressly list a significant number of occupations, the plain language of the statute requires the exclusion of reserve police officers from the scope of the statute. Thus, the district court properly refused to bind defendant over for trial on the resisting and obstructing charge. In addition, the circuit court properly denied the prosecution's application for leave to appeal the district court's decision.

Affirmed.

SAWYER, P.J., dissenting, would have reversed the district and circuit courts, reasoning that MCL 750.81d(7)(b) ought to be broadly interpreted to include reserve police officers as "persons" with whose lawful orders an individual must comply when the orders are issued during the performance of the officers' duties. Nothing in the language of MCL 750.81d suggests that reserve police officers should not be considered police officers for purposes of the statute. The statute neither explicitly includes reserve police officers in its definition of "person," nor does it explicitly exclude reserve police officers from the definition. The distinction between a reserve police officer and a full-time police officer depends not on the nature of their service to the jurisdiction, but on the nature of their schedules. Reserve police officers are part-time officers who work when full-time officers are on vacation or call in sick. Because a reserve police officer is tasked with the same duties as a full-time police officer, an individual who refuses to comply with the lawful order of a reserve police officer should face the same criminal liability as would an individual who refuses to comply with the lawful order of a full-time police officer.

CRIMINAL OFFENSES — RESISTING AND OBSTRUCTING — DEFINITION OF POLICE OFFICER.

MCL 750.81d, the statute prohibiting resisting and obstructing a police officer, does not penalize individuals who refuse to comply with a reserve police officer's command to stop; the resisting and obstructing a police officer statute expressly lists a number of occupations included in its definition of "person" with whose lawful orders an individual must obey when that person is

engaged in the performance of his or her duties, and the individual knows, or has reason to know, that the person is performing those duties; a reserve police officer is not expressly mentioned in the list of occupations to which the statute applies, and thus, the plain language of the statute does not support the prosecution's argument that a reserve police officer falls within the scope of the statute.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, and *William J. Vailliencourt, Jr.*, Prosecuting Attorney, for the people.

*Fraser Trebilcock Davis & Dunlap, PC* (by *Brian P. Morley*), for defendant.

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

SHAPIRO, J. Defendant was arrested and charged with resisting and obstructing a police officer, MCL 750.81d, for failing to comply with the command of a Brighton reserve police officer. At the conclusion of the preliminary hearing, the district court denied the prosecution's bindover request on the grounds that failure to comply with the command of a reserve police officer was not within the scope of the statute. The circuit court denied the prosecution's application for leave to appeal the district court's order, and the prosecution appealed in this Court by leave granted.[1] We affirm.[2]

The resisting and obstructing statute, MCL 750.81d, states:

---

[1] *People v Feeley*, unpublished order of the Court of Appeals, entered April 3, 2015 (Docket No. 325802).

[2] Generally, a district court's decision to bind a defendant over for trial is reviewed for an abuse of discretion. *People v Fletcher*, 260 Mich App 531, 551; 679 NW2d 127 (2004). However, this case involves questions of statutory interpretation, which are reviewed de novo. See *People v Flick*, 487 Mich 1, 8-9; 790 NW2d 295 (2010).

(1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a *person* who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

\* \* \*

(7) As used in this section:

(a) "Obstruct" includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.

(b) *"Person" means any of the following*:

(*i*) A police officer of this state or of a political subdivision of this state including, but not limited to, a motor carrier officer or capitol security officer of the department of state police.

(*ii*) A police officer of a junior college, college, or university who is authorized by the governing board of that junior college, college, or university to enforce state law and the rules and ordinances of that junior college, college, or university.

(*iii*) A conservation officer of the department of natural resources or the department of environmental quality.

(*iv*) A conservation officer of the United States department of the interior.

(*v*) A sheriff or deputy sheriff.

(*vi*) A constable.

(*vii*) A peace officer of a duly authorized police agency of the United States, including, but not limited to, an agent of the secret service or department of justice.

(*viii*) A firefighter.

(*ix*) Any emergency medical service personnel described in . . . MCL 333.20950.

(x) An individual engaged in a search and rescue operation as that term is defined in section 50c. [Emphasis added.]

The prosecution contends that by implication, reserve police officers fall under Subsection (7)(b)(*i*), i.e., "[a] police officer of . . . a political subdivision of this state . . . ." When interpreting statutes, we are required to look at the plain language of the statute to discern the Legislature's intent. *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999). In the resisting and obstructing statute, the Legislature did not include the term "reserve police officer" in the definition of persons whose lawful orders must be obeyed in order to avoid criminal liability. Many other law enforcement personnel one might reasonably consider implicitly included in the term "police officer" were nevertheless explicitly listed in the statute. Had the Legislature intended a broad meaning to apply to the term "police officer," there would have been no need to specify the statute's application to, *inter alia*, university police officers, sheriff's deputies, and federal conservation officers. See *People v Jahner*, 433 Mich 490, 500 n 3; 446 NW2d 151 (1989) (holding that a "consistent principle of statutory construction is that the express mention in a statute of one thing implies the exclusion of other similar things (expressio unius est exclusio alterius)"); see also *People v Malik*, 70 Mich App 133, 136; 245 NW2d 434 (1976). That the Legislature pointedly did not include reserve police officers indicates that the omission was intentional. See *People v Underwood*, 278 Mich App 334, 338; 750 NW2d 612 (2008) (holding that "provisions not included in a statute by the Legislature should not be included by the courts"); see also *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 135; 662 NW2d 758 (2003) (holding that this

Court should assume that omissions by the Legislature are intentional). Thus, by its terms, the statute does not apply to the failure to obey the order of a reserve police officer.[3]

The cases relied on by the prosecution are inapposite. In *People v McRae*, 469 Mich 704, 710-715; 678 NW2d 425 (2004), the Supreme Court held that a reserve police officer was a state actor for Sixth Amendment purposes. The case involved the application of constitutional standards. There is no basis to conclude that because a reserve police officer has been held to be a state actor under certain circumstances that he or she is also a police officer for purposes of the resisting and obstructing statute. Indeed, a completely private citizen may be held to be a state actor for Fourth Amendment purposes. See *United States v Price*, 383 US 787, 794 n 7; 88 S Ct 1152; 16 L Ed 2d 267 (1966). The term "state action" is broad and of no

---

[3] The dissent asserts that the Legislature's decision not to enumerate reserve officers along with the many other enumerated categories of officers is of "no significance" and that we should therefore base our decision on the fact that a lay dictionary defines "police force" as a "body of trained officers . . . ." In our view, this case does not require resort to a lay dictionary, and certainly does not require definition of terms other than those used in the statute. Moreover, the dissent's reliance on the dictionary's use of the general term "trained officers" is belied by the fact that, by statute, the degree of training required to become a reserve police officer is far less than that required to become a "regularly employed" police officer, see MCL 28.602(*l*)(*i*), and may vary from one municipality to another. We also decline to adopt the dissent's view that the difference between police officers and reserve officers "depends not on the nature of their service . . . but on the nature of their schedule." The dissent cites no law in support of this conclusion, and it is factually incorrect because, at least in the department in question, a reserve officer may not exercise any authority unless accompanied by a certified, full-time police officer. Finally, we reject the dissent's suggestion that this analysis would differ depending on whether a county or municipality has separate police and fire departments or uses a unified public safety department.

consequence in this case; for example, a public univer-
sity and its employees are generally state actors, but
no one could argue that by virtue of that legal classi-
fication, they are also police officers for purposes of the
crime of resisting and obstructing.

In *Bitterman v Village of Oakley*, 309 Mich App 53;
868 NW2d 642 (2015), this Court considered whether
information concerning reserve police officers fell
within the law enforcement exception to disclosure
under the Freedom of Information Act (FOIA), MCL
15.231 *et seq*. We reject the prosecution's reliance on
*Bitterman* because the phrase used in MCL
15.243(1)(s)(*viii*), "law enforcement officer, agent, or
informant," is undoubtedly broader than the term
"police officer." Indeed, as this Court opined, reserve
police officers likely fit within the FOIA phrase.[4] *Bit-
terman*, 309 Mich App at 71-72. The term "police
officer" in the resisting and obstructing statute is
markedly narrower. If the Legislature had intended
"police officer," as used in the statute, to be read so
broadly, it would not have needed to include a lengthy
list of law enforcement professionals and other occupa-
tions like firefighters, etc., to whom the law applies,
notably omitting reserve police officers.

The prosecution and the dissent make reasonable
policy arguments in support of their view that the
failure to obey a properly supervised reserve police
officer should result in some level of criminal liability.
However, the decision whether to criminalize such
actions, and if so, what sanctions to impose for engag-

---

[4] The *Bitterman* Court did not decide "whether [police] reservists
should be considered 'law enforcement officers' for the purpose of a FOIA
exemption," because there was no evidence in the record of the reserv-
ists' "power or duties relating to law enforcement or preserving the
peace . . . ." *Bitterman*, 309 Mich App at 72.

ing in such conduct, is a matter reserved for the
Legislature. See *People v Ayers*, 213 Mich App 708, 716;
540 NW2d 791 (1995) ("[T]he power to define crime and
fix punishment is wholly legislative . . . .").

Affirmed.

M. J. KELLY, J., concurred with SHAPIRO, J.

SAWYER, P.J. (*dissenting*). I respectfully dissent.

I disagree with the majority's conclusion that Police
Officer Douglas Roberts, a reserve officer with the city
of Brighton, is not, in fact, a police officer for purposes
of MCL 750.81d. The majority bases its conclusion on
the fact that MCL 750.81d does not specifically list the
job title "reserve police officer" in its definition of
"person" under the statute. I find this reasoning un-
persuasive.

MCL 750.81d(1) establishes as a two-year felony the
following:

> Except as provided in subsections (2), (3), and (4), an
> individual who assaults, batters, wounds, resists, ob-
> structs, opposes, or endangers a person who the individual
> knows or has reason to know is performing his or her
> duties is guilty of a felony punishable by imprisonment for
> not more than 2 years or a fine of not more than $2,000.00,
> or both.

Subsections (2), (3), and (4) establish greater penalties
depending on the level of injury caused to the "person."
Furthermore, MCL 750.81d(7)(b) defines "person" as
any of the following:

> (*i*) A police officer of this state or of a political subdivi-
> sion of this state including, but not limited to, a motor
> carrier officer or capitol security officer of the department
> of state police.

(*ii*) A police officer of a junior college, college, or university who is authorized by the governing board of that junior college, college, or university to enforce state law and the rules and ordinances of that junior college, college, or university.

(*iii*) A conservation officer of the department of natural resources or the department of environmental quality.

(*iv*) A conservation officer of the United States department of the interior.

(*v*) A sheriff or deputy sheriff.

(*vi*) A constable.

(*vii*) A peace officer of a duly authorized police agency of the United States, including, but not limited to, an agent of the secret service or department of justice.

(*viii*) A firefighter.

(*ix*) Any emergency medical service personnel described in . . . MCL 333.20950.

(*x*) An individual engaged in a search and rescue operation as that term is defined in section 50c.

The majority finds great significance in the fact that the term "reserve police officer" is not included in this list. I find no significance in that fact. The majority argues that because this list explicitly includes individuals in a number of categories that might implicitly be considered police officers, the Legislature must have intended to exclude other categories that are not explicitly mentioned. I find this reasoning to be flawed.

The majority's reasoning is correct only if we start with the presumption that the Legislature has implicitly reached the same conclusion that the majority has reached—that a reserve police officer is not, in fact, a police officer. That is, the Legislature would have explicitly included reserve police officers in its listing only (1) if the Legislature did not already consider

reserve police officers to be "police officer[s] of this state or of a political subdivision" under MCL 750.81d(7)(b)(*i*), or (2) if the Legislature wanted to explicitly *exclude* reserve officers from the definition of "person" in MCL 750.81d(7)(b). But there is no evidence in the text of the statute suggesting that the Legislature views a reserve police officer as anything other than a police officer. Nor is there any indication that the Legislature intended to exclude reserve officers from the definition of "person."

Next, it should not be overlooked that the statute, while providing an extensive definition of "person," does not, however, provide a definition of "police officer." Looking to *Merriam-Webster's Collegiate Dictionary* (11th ed), "police officer" is defined as "a member of a police force[.]" And "police force" is defined as "a body of trained officers entrusted by a government with maintenance of public peace and order, enforcement of laws, and prevention and detection of crime." Thus, we need to look at whether Officer Roberts is a "trained officer" entrusted by the city of Brighton with the "maintenance of public peace and order, enforcement of laws, and prevention and detection of crime."

Officer Roberts testified that he attended a 16-week police academy, that he was sworn as an officer for the city of Brighton, that the oath included the obligation to uphold the laws of the city of Brighton and the state of Michigan, and that he was issued a uniform and a weapon. He worked full shifts, in a patrol car, along with a full-time officer. With respect to the specific events in this case, Officer Roberts testified that he and the full-time officer with whom he was working were responding to a call for service regarding a fight in progress at a bar. Defendant was identified as the

person causing the problem, and Officer Roberts approached him and asked to speak with him. Defendant responded by running away from Roberts, who identified himself as a police officer and ordered defendant to stop. Defendant only complied after Officer Roberts repeated the command. After defendant stopped, he looked at Officer Roberts, said "fuck you," and then reached behind his back. Concerned that defendant was reaching for a weapon, Officer Roberts drew his own weapon and ordered defendant to the ground. Defendant complied, and with the assistance of two other officers who had arrived at the scene, defendant was taken into custody. I would suggest that these facts establish that Officer Roberts is a trained officer who has been entrusted by the city of Brighton and its police chief with the "maintenance of public peace and order, enforcement of laws, and prevention and detection of crime."

Moreover, I would note that this dictionary definition of "police officer," and its application to reserve officers, finds some support in our Legislature's language, albeit in a different statute. While I can find no use of the term "reserve police officer" in the statutes of this state, at the time of the events in this case, the concealed pistol license statute defined the terms "reserve peace officer" and "reserve officer" to mean

an individual authorized on a voluntary or irregular basis by a duly authorized police agency of this state or a political subdivision of this state to act as a law enforcement officer, who is responsible for the preservation of the peace, the prevention and detection of crime, and the enforcement of the general criminal laws of this state, and who is otherwise eligible to possess a firearm under this act. [MCL 28.421(1)(g).]

In addition to using a definition similar to the dictionary definitions of "police officer" and "police force," there is another aspect I find compelling—the reference in MCL 28.421(1) to a reserve officer serving on a "voluntary or irregular basis." The distinction between a police officer and a reserve police officer depends not on the nature of their service to the city, but on the nature of their schedule. Both are police officers—that is, both have a duty to preserve the peace, prevent and detect crime, and enforce the criminal laws of this state. The distinction is that a reserve officer does so on an irregular basis. Or, as Officer Roberts testified in this case, he works two or three shifts a month, filling in for officers who are on vacation or have called in sick. That is, unlike a regular, full-time officer, he does not have a regular schedule. But I see nothing in MCL 750.81d that draws a distinction based on whether an officer performs his or her duties according to a regular schedule.

Finally, I would note that if we were to follow the majority's rationale that all categories of "persons" must be explicitly listed in the statute, those "persons" whose job titles are different than simply "police officer" would be necessarily excluded. For example, a number of jurisdictions utilize "public safety" departments rather than police departments. Yet, MCL 750.81d(7)(b) does not include "public safety officers" in its list. I doubt that the Legislature intended to exclude them from the coverage of the statute. Rather, I believe the Legislature presumed that public safety officers, like reserve police officers, fall within the general category of "police officers" because public safety officers are also charged with preserving the peace, preventing and detecting crime, and enforcing the law.

For these reasons, I conclude that Officer Roberts is a police officer of a political subdivision of this state, namely the city of Brighton. Accordingly, defendant could be found guilty under MCL 750.81d if he resisted or obstructed Officer Roberts in the performance of his duties.

I would reverse the lower courts and direct the district court to bind defendant over for trial if it finds that there is otherwise sufficient evidence to do so.